COMMONWEALTH *vs.* THOMAS P. COYNE & another.

Worcester.   October 1, 1917. — October 20, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Practice, Criminal,* Conduct of trial: order of evidence. *Evidence,* In corroboration, Circumstantial.

In a criminal trial, as in a civil one, the order of evidence is within the discretionary power of the presiding judge, who in the exercise of such discretion, after the defendant has introduced some evidence, may permit the district attorney to reopen his case and introduce further evidence in support of the indictment.

At the trial of two defendants upon a joint indictment for breaking and entering a dwelling house in the night time with the intent to commit larceny therein and for the larceny therein of divers articles of jewelry and precious stones of an aggregate value of about $5,000, where evidence has been introduced tending to show that the defendants committed the crime charged, the district attorney may be allowed to show further that neither of the defendants had worked for a year before their arrest and that neither of them had any visible means of support, and that, when arrested about two months after the burglary, one of them had in his possession $350 in money and diamonds and other jewelry of about $1,600 in value and the other had in his possession about $117 in money and diamonds and other jewelry of about $600 in value, although none of the articles found in the possession of either of them is identified as the property stolen or is shown to have come from the house that the defendants are charged with breaking and entering, the jury being instructed to disregard this evidence upon the question of breaking and entering and to consider it only if the breaking and entering should be found to be proved by independent evidence and, even then, only if it should be found that the defendants "had no other source of income to account for the possession of the property found in their possession."

INDICTMENT found and returned in the county of Worcester on the third Monday of January, 1917, charging that the defendants, Coyne and Farrell, on August 28, 1916, did break and enter in the night time the dwelling house of George R. Wallace in Fitchburg with intent to commit. larceny therein and therein did steal

various enumerated articles of jewelry, the property of Helen M. Wallace.

The defendants were tried before *Sanderson,* J. The jury returned a verdict of guilty against each of the defendants, and the defendants alleged exceptions to the admission of certain evidence, which, with the manner of its introduction, is described fully in the opinion.

*J. M. Hoy,* for the defendants.

*E. T. Esty,* District Attorney, for the Commonwealth.

RUGG, C. J. The defendants were indicted jointly for breaking and entering the dwelling house of one Wallace in the night time with the intent to commit larceny, and for the larceny therein of divers articles of jewelry and precious stones of an aggregate value of about $5,000. There was evidence tending to show that the defendants committed the crime.

After the defendants had introduced some evidence the presiding judge, at the request of the district attorney, permitted him to reopen the case and introduce further evidence in support of the charge in the indictment. The conduct of the trial and the order of the introduction of evidence ordinarily is within the discretion of the trial judge. There is nothing to indicate an abuse of such discretion.

The evidence thus introduced out of order was to the effect that when arrested the defendant Coyne had in his possession $350 in money; "one New York, New Haven & Hartford Railroad Company five hundred mile ticket, containing one hundred and fifty-six miles, stamped 'Bridgeport, Conn., Oct. 20, 1916;' one platinum ring set with three diamonds, stated by the defendant to be worth $1,000, but he declined to tell where he got it; one diamond stick pin set in platinum, stated by the defendant to be worth $500; one gold handled knife attached to a fourteen inch gold and platinum link chain, stated by him to be worth together $45; one gold stud button set with a diamond, stated by him to be worth $20; one gold collar button, stated by him to be worth $10, one small gold stick pin set with a diamond, stated by him to be worth $20, one gold locket set with a diamond, attached to a gold chain, both stated by him to be worth $20, one pearl handled knife, stated by him to be worth $4, one open faced gold Elgin watch with the monogram 'T. P. C.' on the case, stated by

him to be worth $40, one pair gold cuff links, stated by him to be worth $20, one black leather travelling bag containing various articles of clothing; . . . that Farrell had in his possession money amounting to about $117; one New York, New Haven & Hartford Railroad Company five hundred mile ticket, containing three miles, stamped 'Stamford, Conn., Oct. 9, 1916,' one Elgin gold watch, stated by the defendant Farrell to be worth $28, one gold ring set with a diamond, stated by him to be worth $425, one platinum watch chain, fourteen inches long, stated by him to be worth $50, one crown stick pin set with diamonds and sapphire, stated by him to be worth $65, one pair pearl cuff links with diamond, stated by him to be worth $15, one gold stud with diamond, stated by him to be worth $20, one gold handled knife set with two small diamonds with the initials 'M. F.' engraved on handle, stated by him to be worth $10, and one black leather travelling bag containing the pair of shoes, clothing and other articles. It was admitted by the Commonwealth that none of the specific articles taken from the Wallace residence were found in the possession of the defendants, or of any one else connected with the defendants." The defendants objected to this evidence unless it could be shown that these articles "had some connection with, or relation to, the breaking and entering of, and larceny in, the Wallace residence, or could be identified as property stolen from the Wallace residence." No other ground of objection appears then to have been suggested.

It is manifest that this ground of objection is not sound. The possession of property of considerable value, whether jewels or money, although not identified as a part of the property stolen, is nevertheless a circumstance proper for the consideration of the jury as tending to show property in the hands of the defendants subsequent to the alleged larceny. Such evidence is competent in the case at bar. Its weight may be trivial or cogent according to other conditions shown. It might be slight against a person of affluence and of extravagant habits. It might be of importance against one of small estate or of no visible means of support. There was evidence tending to show that neither of the defendants had worked for a year and that when arrested they declined to tell where they were on the date of the crime alleged. As to

Coyne, it appeared that when arrested he said in substance that once he had been an inmate of Concord reformatory and was an engraver by occupation; that a witness called by him testified that he had known Coyne for many years, that he did not know what his business was, and that he knew he had worked in a rope factory about eight years before and had been employed in a bakery three or four years before for a few weeks. As to Farrell, it appeared that his sister testified that he had made his home with her for some years, that she saw him at her house every two or three weeks, that she never inquired as to his business and did not know what it was or whether he had any, that she understood he was a travelling salesman and that she knew he had travelled for a varnish house.

This state of evidence does not indicate commonly such a state of financial resourcefulness as accompanies the ownership of the kind and amount of jewelry and diamonds found in the possession of these defendants. The ordinary law abiding man, whether artisan or of other occupation, who has not worked for a year and whose friends or family do not know his business, does not commonly carry about with him for personal use and adornment diamonds and other jewelry of $1,600 value, as did one of these defendants, or even of $600 value, as did the other defendant.

Of course this evidence standing alone does not prove criminal conduct. But there were strong accompanying circumstances of guilt of an independent character. As was said by Mr. Justice Holmes in *Commonwealth* v. *Mulrey*, 170 Mass. 103, at pages 110, 111, "it is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. Evidence which would be colorless if it stood alone may get a new complexion from other facts which are proved, and in turn may corroborate the conclusion which would be drawn from the other facts. . . . It is possible that" these defendants "may have had an independent fortune from which" these jewels were purchased, "but that was open to" them to prove if they "saw fit and was not the probability with regard" to persons in their general situation. Upon the authority of that decision and of *Commonwealth* v. *Montgomery*, 11 Met. 534, this evidence was admissible. If there is anything inconsistent with

this conclusion in *Williams* v. *United States,* 168 U. S. 382, 396, it is equally inconsistent with our law as declared in the authorities just cited. Indeed, the soundness of the federal decision has been doubted. See Wigmore on Evidence, § 154.

The evidence was not too remote in time. It can hardly be said as matter of law that an interval of about two months had broken the reasonable probability of connection between the amount of booty secured by the burglary charged in the indictment and the possession of the jewels found upon the defendants at the time of their arrest.

It was not equivalent to the admission of evidence of another crime. That was not the ground on which it was received. The jury were not permitted to consider it in that connection. But the jury were instructed carefully to disregard this evidence upon the question of breaking and entering and to consider it only if the breaking and entering was found to be proved by independent evidence, and even then only if it was found that the defendants "had no other source of income to account for the possession of the property found in their possession, and if they also found that the money and jewelry were the proceeds, or a part of the proceeds, of the property stolen from the Wallace residence, they might consider this evidence in so far as this property accounts for the defendants not having the specific articles stolen in their possession when arrested; that otherwise they were to disregard the evidence entirely." No exception was taken to the charge. But the defendants have no just ground for complaint in the particulars which have been argued.

*Exceptions overruled.*